56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Manuel ORTEGA-RAMOS, Defendant-Appellant.
 No. 94-3803.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1995.
 
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges; CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Juan Manuel Ortega-Ramos was convicted of unlawful possession with intent to distribute over 100 kilograms of marijuana in violation of 21 U.S.C. Sec. 841(a)(1) and travelling in interstate commerce to facilitate an unlawful activity in violation of 18 U.S.C. Sec. 1952. He appeals his conviction, arguing that the District Court erred in failing to suppress evidence of the marijuana found in the trailer portion of the tractor-trailer he was driving. Defendant argues that he was detained on a pretextual basis following a traffic stop. Defendant also contends that there was no probable cause to search the trailer because the drug-sniffing dog initially alerted to the tractor only and not the trailer. For the reasons discussed below, we affirm.
 
 I.
 
 2
 On February 2, 1994, Ohio State Trooper Jeffrey Greene travelled westbound on Interstate 70, three miles west of the Hilliard-New Rome exit. Greene observed two tractor semi-trailers travelling eastbound on Interstate 70 separated by only approximately fifteen feet. Greene turned around, activated the video camera in his cruiser, and followed them.
 
 
 3
 As he followed them, Greene noticed that the gap between the trucks increased and that the second trailer was from the state of Texas. After activating his beacons, Greene stopped the second truck east of the Hilliard-New Rome exit. Greene first radioed the registration information from the trailer to the patrol post and then met defendant, who was out of the truck and coming to the rear of the trailer. Greene requested defendant's driver's license, explained why he had been stopped, and then requested registration for the truck, bills of lading, and the log book from defendant.
 
 
 4
 Defendant told Greene that he had no bills of lading because the trailer was empty at the time. Greene testified that, in his experience, it was unusual for a commercial truck driver not to have bills of lading. Greene inspected defendant's log book and discovered that it was incomplete. Greene testified that log books are required to be complete because drivers are only permitted to drive a certain number of hours. After further conversation, defendant explained that he was driving for an individual named John White whom he had met at a truck stop in Dallas, Texas.
 
 
 5
 Defendant told Greene that he had driven a load from Dallas to Springfield, Missouri, where he was met by two unknown individuals who had removed the trailer from his tractor, taken the trailer somewhere, and later returned with the empty trailer padlocked. Defendant said he was then instructed to drive to Columbus, Ohio, check into a motel, and wait for a telephone call from White. Defendant denied knowing the combination of the padlock on the trailer and told Greene that the trailer would be padlocked by the trucking company to prevent a driver from making unauthorized use of the trailer. Greene testified that based on his experience with truck drivers, it did not seem cost effective for defendant to be driving an empty trailer between Missouri and Ohio. (Joint App. 71).
 
 
 6
 Greene issued defendant a citation for following too close, in violation of Section 4511.34 of the Ohio Revised Code.[1] Because of his conversation with defendant, Greene requested assistance from Trooper Tammy Getz, who worked with a drug detection dog. Getz and her dog, Ilco, arrived within fifteen minutes of the stop.
 
 
 7
 The dog was asked to sniff twice. First, the dog was asked to sniff both the tractor and the passenger, or curb, side of the trailer and it alerted to the tractor on the driver's side. Getz followed her typical procedure of playing with the dog once it had alerted. The dog was then put into the cruiser. Greene asked defendant whether he could "take a look." Defendant responded, "[N]o, go ahead," and the tractor was searched. (Joint App. 101-02). The search produced no contraband.
 
 
 8
 While the tractor was being searched, the dog was asked to finish sniffing the trailer. It alerted to a portion of the tractor on the driver's side and alerted three times to different portions of the tractor on the driver's side. Greene cut the lock off the trailer and discovered over 500 kilograms of marijuana.
 
 
 9
 At the suppression hearing Getz testified that she checked the wind direction at the time of the sniff. She stated that the wind was blowing from the passenger side of the tractor-trailer to the driver's side and that the strongest scent would therefore be on the driver's side. (Joint App. 54).
 
 
 10
 The District Court found that there was probable cause for the search and a jury convicted defendant of possession with intent to distribute over 100 kilograms of marijuana and travelling in interstate commerce to facilitate unlawful activity. Defendant now appeals.
 
 II.
 
 11
 Defendant contends that the search was conducted in violation of the Fourth Amendment and that the District Court erred in failing to suppress the marijuana discovered as a result of the search. When reviewing a district court's denial of a motion to suppress, we accept the court's findings of fact in connection with the motion unless they are clearly erroneous and review the court's conclusions of law de novo. United States v. Dotson, 49 F.3d 227, 229 (6th Cir. 1995).
 
 
 12
 The government argues that defendant had no standing to challenge the search because he had no expectation of privacy in the padlocked trailer. We need not address this issue because of our disposition on the merits.
 
 
 13
 Defendant first argues that the search was conducted in violation of the Fourth Amendment because he was detained on a pretextual basis after the traffic stop. We disagree. Defendant concedes, as he must, that the initial traffic stop was valid because he was following too closely in violation of Ohio's motor vehicle code. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." United States v. Ferguson, 8 F.3d 385 (6th Cir. 1993), cert. denied, 115 S.Ct. 97 (1994).
 
 
 14
 Defendant argues, however, that he was unlawfully detained after the stop because Greene did not have probable cause to believe that there was contraband in the trailer. An officer must have an "objectively reasonable articulable suspicion that illegal activity has occurred or is occurring" in order to detain the driver for questioning unrelated to the initial stop. United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993); United States v. French, 974 F.2d 687, 692 (6th Cir. 1992), cert. denied 113 S.Ct. 1012 (1993).
 
 
 15
 It was reasonable for Greene to detain defendant long enough to obtain a drug dog based on defendant's statements to Greene about the trailer and the fact that defendant had no bills of lading and an incomplete log book. The length of time defendant was detained, no more than fifteen minutes from the initial stop, was also justified. By obtaining the dog, Greene "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly ...." United States v. Knox, 839 F.2d 285, 290 (6th Cir. 1988) (thirty minute detention expedited through use of drug-sniffing dog), cert. denied, 490 U.S. 1019 (1989).
 
 
 16
 Defendant next contends that Greene did not have probable cause to break into the locked portion of the trailer once the dog failed to alert to the trailer.[2] "[A] warrantless search of a vehicle lawfully stopped by the police does not violate the fourth amendment if the officers have probable cause to believe the vehicle contains contraband." United States v. Paulino, 935 F.2d 739, 747 (6th Cir. 1991), cert. denied, 502 U.S. 1036 (1992). The District Court found, based on Getz' testimony, that the dog had been trained in accordance with proper procedures and that the dog had never given a false positive alert under controlled circumstances. The court found that the dog was reliable and that the dog's alert on the tractor and trailer was a reliable indication that illegal narcotics were present in the tractor or the trailer. (Joint App. 141). These findings are not clearly erroneous. It was reasonable for the officers to have the dog sniff around the entire tractor and trailer, especially given the wind conditions. We agree with the District Court that there was probable cause for the search of both the tractor and the trailer.
 
 III.
 
 17
 For the foregoing reasons, we AFFIRM defendant's conviction.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant was also cited for failing to display a current highway use tax sticker
 
 
 [2]
 The government contends that defendant consented to this search. Because we find probable cause, it is not necessary for us to reach this issue