#25431, #25432-a-DG

**2010 S.D. 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

ROBERT P. OVERBEY,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANDREW J. KNECHT
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                           and appellee.


DAVID L. CLAGGETT
Spearfish, South Dakota                    Attorney for defendant
                                           and appellant.

* * * *

                                           CONSIDERED ON BRIEFS
                                           ON AUGUST 24, 2010

                                           OPINION FILED **10/06/10**

GILBERTSON, Chief Justice

[¶1.]       Defendant appeals his convictions for Possession of a Controlled Substance with Intent to Distribute, Possession of a Controlled Substance, and Possession of Marijuana under claims of violation of the Fourth Amendment. He also appeals the sufficiency of the evidence for the convictions. In addition, Defendant challenges his conviction on the Failure to Appear charge based on his contention that his underlying criminal convictions should be reversed. Finally, Defendant alleges that his sentences were grossly disproportionate given his character and the factual basis of the convictions, and that the trial court failed to take into consideration mitigation evidence. We affirm.

## FACTS

[¶2.]       On August 5, 2007, at approximately 5:35 p.m., South Dakota Highway Patrol Officer Larry Langenfeld conducted a traffic stop of a four-door, diesel pickup pulling a fifth-wheel camper. The pickup displayed a Colorado dealer's plate on the back of the pickup, but failed to have a license plate on the front, which Officer Langenfeld knew was required by Colorado statute. Officer Langenfeld identified the driver as Jason Overbey (Jason) and the passenger as Katherine Gaskins. Officer Langenfeld also noticed a strong odor of perfume or cologne emanating from the interior of the pickup. After initiating the traffic stop, Officer Langenfeld asked Jason to accompany him to his Highway Patrol cruiser.

[¶3.]       Because Officer Langenfeld knew that perfume or cologne is sometimes used to mask the odor of drugs and because Jason was overly nervous, fidgety, and hesitated to make eye contact, Officer Langenfeld initiated a call for a K-9 unit.

Officer Langenfeld told Jason he would issue a warning ticket but that Jason was not yet free to leave until after the K-9 sniff was conducted. Thirteen minutes after the stop was initiated, and eight minutes after Jason was placed in the cruiser, Trooper Shane Severn arrived with his drug dog, Cas. Although not visible on the arrest compact disc, Cas alerted to the presence of illegal drugs on the pickup's passenger side. Within three minutes the drug sniff was completed.

[¶4.] When the officers put their heads into the pickup to begin the search, both smelled the odor of raw marijuana. The search of the pickup generated three baggies of marijuana and a pipe. Jason told the officers that the marijuana belonged to his brother. The officers then entered the fifth-wheel camper to conduct a search. They discovered two individuals, Michelle Prytla and Robert P. Overbey (Defendant), hiding under a bed in the trailer. Defendant appeared to be under the influence of alcohol or another substance.

[¶5.] The officers conducted a warrantless search of the fifth-wheel camper and told the occupants they did not need a warrant given what the officers had discovered in the pickup. The search of the camper revealed a glass pipe inside a jewelry box that was contained within a closed drawer. A digital scale was discovered in a closed drawer beneath the one in which the pipe was found. In the area where a bed was located, officers also found a piece of aluminum foil and a baggie containing a powdery substance. Subsequent laboratory tests indicated that methamphetamine residue was present on the pipe, scale, and aluminum foil, and that the powdery substance in the baggie was methamphetamine (meth). Officers removed a black metal lockbox from the wall of the trailer, which they opened with

a crowbar after the key failed to work. Inside the lockbox officers found a bag containing approximately one ounce of crystal methamphetamine. Subsequent testing revealed a total of eleven grams of marijuana in the pickup and 45.77 grams of meth in the camper.

[¶6.]     The officers confronted the four individuals about the drugs. Each denied knowledge of the meth. All four were arrested. The pickup was owned and registered to Jason Overbey. Jason and Defendant jointly owned the camper.

[¶7.]     Defendant was charged with the Unauthorized Possession of a Controlled Substance with Intent to Distribute (meth) in violation of SDCL 22-42-2 and SDCL 32-12-52.3; Possession of a Controlled Substance (meth) in violation of SDCL 22-42-5 and SDCL 32-12-52.3; and Possession of Marijuana – Less than Two Ounces under SDCL 22-42-6. Defendant's motion to suppress the evidence seized from the pickup and the camper was denied by the trial court. Defendant was found guilty by a jury.

[¶8.]     On the date set for his sentencing hearing, Defendant claimed he understood the hearing was in the afternoon rather than at 11:30 a.m. His son was able to notify the trial court on his behalf and the trial court agreed to reschedule the hearing for 2:30 in the afternoon in order for Defendant's flight to arrive and travel by car to the courthouse. However, after landing in Rapid City, Defendant boarded a departing flight rather than appearing at the hearing that had been rescheduled to accommodate his late arrival. Defendant was subsequently charged with Failure to Appear under SDCL 23A-43-31(1). Defendant was a fugitive for

over one year after failing to appear. Defendant eventually pleaded guilty to the Failure to Appear charge.

[¶9.]    Defendant was sentenced to ten years in the state penitentiary with one year suspended on the Possession of a Controlled Substance with Intent to Distribute conviction, a Class 4 felony with a maximum sentence of ten years in the penitentiary. *See* SDCL 22-42-2; SDCL 22-6-1(7). Defendant received a sentence of six years for the Possession of a Controlled Substance count, also a Class 4 felony with a maximum sentence of ten years. *See* SDCL 22-6-1(7). Defendant was also sentenced to two days in the Meade County jail on the Possession of Marijuana conviction, a misdemeanor punishable by up to one year in county jail. SDCL 22-42-6. Finally, Defendant was sentenced to two years in the penitentiary on the Failure to Appear conviction, a Class 6 felony punishable by up to two years in the penitentiary, to be served consecutively with the sentences on the drugs charges. *See* SDCL 23A-43-31(1); SDCL 22-6-1(9).

[¶10.]    Defendant appeals raising the following issues:

1.  Whether the trial court erred when it denied Defendant's motion to suppress.

2.  Whether there was sufficient evidence to support a conviction on the Possession of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute charges.

3.  Whether Defendant's Failure to Appear conviction should be overturned.

4.  Whether the sentence imposed constituted cruel and unusual punishment.

## STANDARD OF REVIEW

[¶11.] "This Court reviews the denial of a motion to suppress alleging a violation of a constitutionally protected right as a question of law by applying the de novo standard." *State v. Ludemann*, 2010 S.D. 9, ¶ 14, 778 N.W.2d 618, 622 (quoting *State v. Madsen*, 2009 S.D. 5, ¶ 11, 760 N.W.2d 370, 374). We review the trial court's findings of fact under the clearly erroneous standard and give no deference to its conclusions of law. *Id.* (citing *State v. Haar*, 2009 S.D. 79, ¶ 12, 772 N.W.2d 157, 162). As this Court has often noted,

> [t]his court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*In re H.L.S.*, 2009 S.D. 92, ¶ 11, 774 N.W.2d 803, 807-08 (quoting *State v. Baysinger*, 470 N.W.2d 840, 843 (S.D. 1991) (internal citations omitted)).

[¶12.] We review the denial of a motion for judgment of acquittal as a question of law under the de novo standard. *State v. Packed*, 2007 S.D. 75, ¶ 17, 736 N.W.2d 851, 856 (quoting *State v. Disanto,* 2004 S.D. 112, ¶ 14, 688 N.W.2d 201, 206). On appeal, the question before this Court is "whether the 'evidence was sufficient to sustain the convictions.'" *State v. Adamson*, 2007 S.D. 99, ¶ 17, 738 N.W.2d 919, 924 (quoting *State v. Running Bird*, 2002 S.D. 86, ¶ 19, 649 N.W.2d 609, 613). We consider the evidence in a light most favorable to the verdict and will not set aside a guilty verdict on appeal "if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt. We do

not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence." *Id.*

[¶13.] We generally review a sentence within the statutory maximum under the abuse of discretion standard of review. *State v. Blair*, 2006 S.D. 75, ¶ 20, 721 N.W.2d 55, 61-62 (citing *State v. McKinney*, 2005 S.D. 73, ¶ 10, 699 N.W.2d 471, 476). However, when a sentence is challenged on constitutional grounds as being cruel and unusual, we apply the proportionality standard from *State v. Bonner*, 1998 S.D. 30, 577 N.W.2d 575. *See State v. Piper*, 2006 S.D. 1, ¶ 72, 709 N.W.2d 783, 810-11 (citing *Bonner*, 1998 S.D. 30, ¶17, 577 NW2d at 580).

## ANALYSIS AND DECISION

[¶14.]     1.     **Whether the trial court erred when it denied Defendant's motion to suppress.**

[¶15.] Defendant argues that the trial court erred when it denied his motion to suppress evidence. He argues that under *Arizona v. Gant*, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the police violated the Fourth Amendment because they searched the camper when it was not within Jason's reach at the time of the traffic stop. In the alternative, Defendant argues that the officer lacked probable cause to believe the camper contained contraband because the drug dog did not alert to the camper but only to the pickup. Defendant also argues that the initial stop was illegal as it was no more than a curiosity stop. Finally, Defendant argues that the search exceeded the scope of the stop. We first address Defendant's argument that the stop was a curiosity stop because this is the threshold issue.

[¶16.] The Fourth Amendment's "prohibition against unreasonable searches requires generally the issuance of a warrant by a neutral judicial officer based on

probable cause prior to the execution of a search or seizure of a person." *In re H.L.S.*, 2009 S.D. 92, ¶ 14, 774 N.W.2d at 808 (quoting *State v. Mattson,* 2005 S.D. 71, ¶ 29, 698 N.W.2d 538, 548). Exceptions to the warrant requirement include investigative detentions where an officer has reasonable suspicion to believe criminal activity "may be afoot." *State v. DeLaRosa*, 2003 S.D. 18, ¶ 7, 657 N.W.2d 683, 686 (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). With regard to a traffic stop, all that is required is that the officer have "'specific and articulable suspicion of a violation' for a traffic stop to be permissible." *Id.* ¶ 8 (citing *State v. Cuny*, 534 N.W.2d 52, 53 (S.D. 1995)). The observation of a minor violation is sufficient to justify stopping of a vehicle. *Mattson*, 2005 S.D. 71, ¶ 30, 698 N.W.2d at 548 (quoting *State v. Akuba*, 2004 S.D. 94, ¶ 15, 686 N.W.2d 406, 413).

[¶17.] Officer Langenfeld pulled Jason over because his pickup did not have a front license plate as required by Colorado Revised Statute Annotated 42-3-202(1). This statute provides in part: "Number plates assigned to a self-propelled vehicle other than a motorcycle or street rod vehicle shall be attached thereto, one in the front and the other in the rear." There is no dispute in the record that Officer Langenfeld saw the missing front license plate and knew that Colorado statute required its presence. Furthermore, SDCL 32-5-46 exempts out-of-state motorists from displaying South Dakota issued license plates as required by SDCL 32-5-98, if an out-of-state motorist has complied with the requirements of his or her home state's statutory scheme for motor vehicle license plates. In this case, Jason was

not in compliance with the Colorado statute, and was thus not in compliance with SDCL 32-5-98, which justified the traffic stop.

[¶18.]	Defendant also argues that Officer Langenfeld had a pretextual reason for stopping Jason.  However, as this Court has previously noted, "even if an officer has subjective reasons for stopping someone, 'those subjective reasons are not relevant.'" *State v. Lockstedt*, 2005 S.D. 47, ¶ 20, 695 N.W.2d 718, 723 (quoting *State v. Chavez*, 2003 S.D. 93, ¶ 20, 668 N.W.2d 89, 96).  "An objectively reasonable stop will not be invalidated even if the stop was pretextual." *Id.*  Any pretextual reason Officer Langenfeld may have had for the stop was irrelevant given that he witnessed a legitimate violation of the Colorado statute that required a front and rear license plate to be displayed on a vehicle registered in Colorado.

[¶19.]	Defendant next argues that under *Arizona v. Gant*, the officers illegally searched the camper after placing Jason in a patrol car.  Defendant contends that *Gant* precluded officers from conducting a search of the camper and limited their search to the pickup.  Defendant contends that the search was limited because only the pickup's interior was within Jason's reach or could have contained offense-related evidence after the drug dog alerted to the cab of the pickup and not to the camper.

[¶20.]	Defendant's reliance on *Gant* is misplaced.  *Gant* involved a search incident to an arrest.  *See* ___ U.S. at ___, 129 S.Ct. at 1714.  In *Gant*, the defendant was arrested for driving on a suspended license.  *Id.*  After the defendant was handcuffed and placed in a patrol car, the officers searched the passenger compartment of the defendant's car.  *Id.*  The United States Supreme Court held

that the search was illegal because the officers could not expect to find offense-related evidence in the passenger compartment of the defendant's car given the offense for which the defendant was arrested. *Id*.

[¶21.]        Here, Defendant was not arrested prior to the search and the State did not argue that the officers based their search on the search incident to an arrest exception to the warrant requirement. As such, the rule in *Gant* is inapplicable to the facts of this case. Instead, the State based its argument on the motor vehicle exception to the warrant requirement and contended that the search of the pickup, the containers therein, and the camper were constitutionally permissible once Cas, the drug dog, alerted to the odor of drugs in the pickup's cab.

[¶22.]        Defendant's next argument regarding the stop is that the search of the camper was illegal because Cas only alerted to the pickup's cab. Once probable cause exists for the search of a vehicle, it enables a search of the entire vehicle. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). A tractor-trailer, or a camper hitched to a pickup, is one unit. *United States v. Ortega-Ramos*, 56 F.3d 65 (Table), 1995 WL 314889, *3 (6th Cir. 1995); *United States v. Torres*, 2005 WL 3546677, *7-8 (S.D. Ohio) (citing *United States v. Ervin*, 907 F.2d 1534, 1537-38 (5th Cir. 1990); *Aviles v. Burgos*, 783 F.2d 270, 276 (1st Cir. 1986)). A drug dog's alert to the tractor of a tractor-trailer and not to the trailer is a reliable indication that illegal narcotics are present in the tractor *or* trailer. *Torres*, 2005 WL 3546677 at *7-8 (citing *Ortega-Ramos,* 1995 WL 314889 at *3); *United States v. Dennis*, 113 F.3d 1247 (Table), 1997 WL 282870, *2 (10th Cir. 1997)).

[¶23.]    Defendant's argument that the drug dog alert to the pickup did not permit a constitutional search of the camper fails. The fifth-wheel camper was being towed by the pickup in the same fashion in which a semi-tractor tows a trailer. The camper was a part of the pickup and subject to search as long as the motor vehicle exception was satisfied as to any part of the pickup or camper.

[¶24.]    Defendant's final argument is that the detention exceeded the scope of the stop because it went beyond the time required to conduct a computer check, verify documents, examine vehicle equipment, and issue a citation. Without indicating what Officer Langenfeld should or should not have done during the stop, it is difficult to ascertain the essence of Defendant's argument. Defendant appears to be arguing that Officer Langenfeld should not have called for the drug dog because it impermissibly extended the time it took to conduct the necessary steps for the traffic stop. However, the trial court found that when Officer Langenfeld told Jason that only a warning ticket would be issued, Langenfeld also told Jason he would not be free to leave until after the drug dog conducted a sniff of the vehicle's exterior. At that exact moment, Trooper Severyn and Cas arrived and the drug sniff was conducted immediately. Within three minutes the drug sniff was completed and the law enforcement officers called dispatch to report that they would be conducting a vehicle search.

[¶25.]    As this Court has held before, "[w]e cannot accept the premise that while the State's interest in drug interdiction is compelling, a few seconds delay for non-entry sniffing the exterior of a vehicle by a dog already on the scene is constitutionally unreasonable." *DeLaRosa,* 2003 S.D. 18, ¶ 11, 657 N.W.2d at 687.

It was not unreasonable for Jason to wait less than three minutes while the drug dog was walked around the vehicle after Jason was advised that he would not be free to leave until after the drug dog sniff was conducted. The drug dog was at the scene as the ticket was being issued, and Jason did not have to wait for a prolonged period of time for the drug dog to arrive before the search was commenced. There was no perceptible difference between the drug dog being on site while the ticket was being written and then conducting the drug sniff, in comparison to the drug dog arriving at the scene while Officer Langenfeld was finishing writing the ticket and conducting the sniff immediately thereafter.

[¶26.] **2. Whether there was sufficient evidence to support a conviction on the Possession of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute charges.**

[¶27.] Defendant argues that the trial court erred when it denied his motion for acquittal. His first argument is that the trial court erroneously denied two jury instructions Defendant sought that collectively requested the trial court to instruct the jury that ingestion of a controlled substance can be a lesser included offense of the charge of Possession of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute. Defendant also argues that there was insufficient evidence or circumstantial evidence of the intent to sell element.

[¶28.] "The fact that the methamphetamine was not *on* defendant's person when found by the police does not negate a finding of possession." *State v. Deneui*, 2009 S.D. 99, ¶ 69, 775 N.W.2d 221 (citing *State v. Goodroad,* 442 N.W.2d 246, 251 (S.D. 1989)). It is sufficient for a conviction of knowing possession for the defendant to have control over the premises where the narcotics were found. *Id.* (citing

*Goodroad*, 442 N.W.2d at 251). Possession, whether constructive or actual, need not be exclusive to support a conviction for knowing possession. *State v. Barry*, 2004 S.D. 67, ¶ 9, 681 N.W.2d 89, 92-93 (citing *Goodroad*, 442 N.W.2d at 251).

[¶29.] In this case, among the evidence seized during the initial search of the camper was a digital scale with a white powdery residue on it. That substance was eventually determined to be methamphetamine. Defendant admitted to Officer Langenfeld that the scale belonged to Defendant and that he had received it as a gift from a friend. Officer Langenfeld also testified at trial that digital scales are used to weigh illegal drugs for sale and not for personal use of drugs. In addition to the scale, Officer Langenfeld found several bags of meth inside the camper. According to his testimony, Officer Langenfeld made the arrest for possession with intent to distribute (meth) based on the quantity of meth found during the search, forty-eight to fifty-two grams; the digital scale; and the approximate street value of meth of $100 to $120 per gram, which resulted in a total value between $4,800 and $6,350 for the amount discovered in the camper. Based on this evidence, it was reasonable for the jury to find that Defendant intended to distribute the meth rather than use it for personal consumption.

[¶30.] **3. Whether Defendant's Failure to Appear conviction should be overturned.**

[¶31.] Defendant argues that his conviction for the failure to appear charge must be overturned in the event the underlying convictions are reversed. Because we find that the convictions for Possession of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute are not constitutionally deficient, Defendant's argument fails on this issue.

[¶32.]     4.     **Whether the sentence imposed constituted cruel and unusual punishment.**

[¶33.]     Defendant's final issue on appeal is whether the sentences, as imposed by the trial court, constitute cruel and unusual punishment in violation of the Eighth Amendment. Defendant argues that the sentence he received was "excessive and clearly disproportionate to the severity of the crime in light of the evidence used at trial to obtain a conviction." He further argues that his sentence exceeded the minimum amount of incarceration needed to protect the public and provide for rehabilitation, was not proportionate to the crimes for which he was convicted, and that the trial court ignored mitigating factors. Mitigating factors, according to Defendant, were the lack of evidence to show he had profited from the sale of drugs in the past, his criminal record was "relatively clean," he had a successful business, he was generous, and he was supported by his family and friends.

[¶34.]     The *Bonner* proportionality review requires this Court to: "first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends." *Blair*, 2006 S.D. 75, ¶ 21, 721 N.W.2d at 61 (quoting *Piper,* 2006 S.D. 1, ¶ 72, 709 N.W.2d at 810-11). "We also compare 'the sentence with the criminal acts defendant committed and the consequences of those acts upon the victims and society.'" *Id.* (quoting *Bonner,* 1998 S.D. 30, ¶ 22, 577 N.W.2d at 581) (additional citations omitted). An intra and inter-jurisdictional analysis is warranted only when the sentence appears grossly disproportionate. *Id.* (citing *Bonner,* 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580).

[¶35.] It is also settled that a trial court's sentencing discretion requires understanding that "the Legislature in establishing a punishment range of zero to [ten] years for [Possession of a Controlled Substance with Intent to Distribute] intended the more serious commissions of this crime to deserve sentences at the harsher end of the spectrum." *See id*. ¶ 26, 721 N.W.2d at 63. The more severe sentences are reserved for the most serious combinations of the crime and the defendant's background. *Id*. (quoting *Bonner,* 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582).

[¶36.] The imposition of a proportionate sentence requires the trial court to "acquire a thorough acquaintance with the character and history of the [defendant] before it." *Id.* ¶ 27 (quoting *Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580). The trial court has discretion to consider the following factors: "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record[,]" as well as the rehabilitative prospects of the defendant. *Id.* (quoting *Bonner,* 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580). The effect of the crime on the victims may also be considered. *Id.* (citing *State v. Rhines,* 1996 S.D. 55, ¶¶ 130-134, 548 N.W.2d 415, 445-46) (additional citations omitted).

[¶37.] The trial court had before it the evidence admitted at trial as well as a presentence investigation report. The trial court also had before it the evidence concerning Defendant's conviction for Failure to Appear and the factual basis for that conviction. In imposing its sentence, the trial court focused on Defendant's failure to take responsibility for his actions for the drug charges during trial and his

failed attempt to focus the blame on co-defendants, a strategy the jury did not embrace. The trial court focused on Defendant's failure to appear as ordered and his subsequent attempts at the sentencing hearing to shift the blame onto others involved in the case including his former attorney and the prosecutor. Based on what the trial court perceived to be Defendant's unwillingness to accept personal responsibility for his crimes and the facts as found by the jury, it imposed nearly the maximum sentence for the Possession of a Controlled Substance with Intent to Distribute. The trial court imposed the maximum for the Failure to Appear convictions. Based on this record, we do not find either sentence grossly disproportionate given that Defendant was unwilling to accept personal responsibility for his actions, which reduced his rehabilitative prospects.

[¶38.]     The trial court did not err in admitting the evidence seized from the camper, in denying Defendant's motion for judgment of acquittal, in accepting Defendant's guilty plea to the Failure to Appear charge, or in imposing the sentence. We affirm.

[¶39.]     KONENKAMP, ZINTER, MEIERHENRY and SEVERSON, Justices, concur.