#29837-a-SPM
**2023 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DEREK AT THE STRAIGHT,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARGO NORTHRUP
Judge

\* \* \* \*

BRAD A. SCHREIBER
Pierre, South Dakota                    Attorney for defendant
                                        and appellant.


MARK VARGO
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 30, 2022
OPINION FILED **01/04/23**

MYREN, Justice

[¶1.] Derek At The Straight was indicted for attempted first-degree murder, four counts of aggravated assault, and commission of a felony while armed with a firearm. During and after his jury trial, At The Straight moved for judgment of acquittal, which the circuit court denied both times. The jury convicted At The Straight on all counts charged in the indictment. In a second jury trial, At The Straight was found to be a habitual offender. At The Straight appeals. We affirm.

## Facts and Procedural History

[¶2.] On July 9, 2020, a shooting occurred outside a residence at 412 West Prospect Avenue in Pierre, South Dakota. Dillon Big Eagle suffered non-fatal gunshot wounds. A Hughes County grand jury indicted At The Straight for attempted first-degree murder (SDCL 22-16-4 and 22-4-1), four counts of aggravated assault (SDCL 22-18-1.1(1), (2), (4), and (5)), and commission of a felony while armed with a firearm (SDCL 22-14-12). The case went to a jury trial on August 2, 2021.

[¶3.] At trial, Dillon testified about the events leading up to the shooting. Dillon testified that his sister, Chanel Big Eagle, was in a romantic relationship with At The Straight at the time of the shooting. A few weeks before the shooting, Dillon and At The Straight were involved in a verbal altercation. This created a rift between Chanel and Dillon, as the two were not seeing "eye to eye."

[¶4.] According to Dillon, his friend Markus Knight—who had recently been released from prison—wanted to visit Chanel. Izebella Garreaux, Knight's niece, drove Dillon and Knight to Chanel's house for a visit. Because Chanel was not

home when they arrived, Dillon called her and told her they were at her house and that Knight wanted to see her. When Chanel returned home, Dillon and Knight helped her move some boxes. Shortly after, Chanel asked Dillon to leave.

[¶5.] As Dillon began to leave, a vehicle drove in front of Chanel's house. Dillon recognized the driver to be At the Straight. Dillon explained that At The Straight exited the car, spoke briefly to Dillon and Knight, pulled out a firearm, and began shooting Dillon. Dillon suffered gunshot wounds to the chest, legs, and arms. Garreaux drove him to the emergency room. Dillon thought he was going to die.

[¶6.] Dillon also testified that during a road trip a few weeks earlier, At The Straight showed him a 9-millimeter pistol and fired it. Dillon also described written notes he received from At The Straight while they were both in jail after the shooting.[1]

---

1. Two notes were received into evidence. The first note, Exhibit 4, stated:

> Aye I just got off a 3 way phone call with Adam PB Down
> in Mike Durfee one of "your RBH homies", Well he
> happens to be one of my best good friends. Anyways, they
> were wondering about you and your status. I told em
> your next door and I could get word to you? He said
> whats up and if you wanna be like then you know what
> time it is. . [sic] Anyways see you in that court room. See
> what your made of. "I dunno who shot you."

The second note, Exhibit 5, read:

> I just 3 way'd phone call with Adam PB, down in Mike Durfee.
> Your RBH homie . . . they was askin about your status. He said
> whats up and if you wanna be like that you know the deal. Yea
> he is one of my buddies. Anyways . . [sic] I don't know who shot
> you. . [sic] Fuck What you talk about . . . your all something else
> . . [sic] wanna talk + testify . . . I don't know yall . . [sic] or the
> shit yall talk about

[¶7.]    Garreaux testified via deposition because she was unavailable to testify at the trial. The transcript was read to the jury, and it included the following account of events. Garreaux was waiting in her car while Knight and Dillon visited Chanel. Garreaux noticed a black car pull up behind her. She did not see the driver because she was preoccupied with her phone. While listening to loud music in her car, she heard three gunshots. Over the loud music, the gunshots sounded like small-caliber shots, so she did not become alarmed until Dillon approached her vehicle. He told her he had been shot and asked her to take him to the hospital. While she drove Dillon to the hospital, he dialed 911 on his phone. Garreaux repeated Dillon's descriptions of his injuries to the 911 operator. She testified that she never got out of her car at the scene of the shooting and did not know who shot Dillon.

[¶8.]    Detective Charles Swanson of the Pierre Police Department testified that he received a call from dispatch about a shooting occurring around 8:55 p.m. Investigating the scene, he found a blood trail from the house's front step to the street, along with three spent 9mm shell casings. He collected the 9mm shell casings, a blood sample from the sidewalk, and blood samples from Garreaux's car, all of which were submitted to the South Dakota Forensic Lab for testing.

[¶9.]    Several days later, At The Straight's black Chevrolet Impala was found in Rapid City, as related further below. Detective Swanson testified that he participated in executing a search warrant on the car, collecting swabs from the steering wheel, door handle, and gear shifter. In the Impala, he also found two loaded magazines for a 9mm Beretta PX4 Storm pistol, additional ammunition, a

bill of sale for the Impala (listing At The Straight as the purchaser), and mail addressed to At The Straight. The ammunition, magazines, and swabs from the Impala were sent to the state lab for testing.

[¶10.] Detective Swanson testified that a search of Chanel's cell phone records revealed that she called Dillon and At The Straight shortly before the shooting. A photo from Chanel's phone was admitted into evidence. In the photo, At The Straight points a handgun at the camera while seated on a couch next to Chanel. Detective Swanson testified that the gun in the picture appeared to be a Beretta PX4 Storm subcompact model with a laser sight. He further testified that law enforcement had not recovered the firearm used in the shooting.

[¶11.] Daniel Puppel, an inmate incarcerated at the Hughes County Jail along with Dillon and At The Straight, testified that he wrote two letters to Dillon on behalf of At The Straight that were meant to threaten and intimidate Dillon. At The Straight told Puppel that he went to Chanel's house on the night of the shooting as soon as he learned Dillon was there because Dillon was not supposed to be there. At The Straight admitted to shooting Dillon, disassembling the gun, and throwing the gun components out the window while driving to Bonesteel, South Dakota.

[¶12.] Hank Prim, a special agent with the South Dakota Division of Criminal Investigation, testified that Puppel informed him about his involvement with the letters to Dillon and agreed to testify. Special Agent Prim acknowledged that Puppel was seeking consideration from the State in exchange for his cooperation. Special Agent Prim testified that Puppel agreed to speak with

prosecutors, but Special Agent Prim was unaware whether any deal had been formalized between Puppel and the prosecutors.

[¶13.] Dr. James Bear, the attending physician at Avera Hospital in Pierre on the night of the shooting, testified by deposition about Dillon's condition when he arrived at the hospital. Dr. Bear testified that he did not expect Dillon to survive his injuries due to extreme blood loss. He explained that Dillon was flown to Sioux Falls because of the severity of his injuries.

[¶14.] Patrick Rose, a deputy sheriff for the Pennington County Sheriff's Department, testified that on July 11, 2020—two days after the shooting—he was dispatched to investigate an abandoned 2013 black Chevrolet Impala parked in Rapid City, South Dakota. While waiting for a tow truck, he observed a white Ford pickup arrive at the scene. Deputy Rose became suspicious because he noticed that the male passenger in the Ford was attempting to hide his face. Because the pickup did not have license plates, Deputy Rose conducted a traffic stop.

[¶15.] The traffic stop revealed three people in the pickup, including At The Straight, who initially told Deputy Rose his name was Lane Jandreau. During a search of the Ford pickup, Deputy Rose discovered the key to the Impala and a wallet with a bank card bearing Derek At The Straight's name. Deputy Rose testified that he ran At The Straight's name through the criminal database and viewed a photograph of At The Straight to confirm his identification.

[¶16.] Frans Maritz, a forensic scientist from the South Dakota Forensic Lab, testified about his analysis of the three spent cartridges found at the shooting scene and the magazines and ammunition found in At The Straight's Impala. Maritz

testified that, through microscopic comparison, he could confirm that the same weapon fired all the spent ammunition found at the shooting scene. He testified that two of the spent cartridges were manufactured by Federal Cartridges. The third spent cartridge was manufactured by Winchester but marketed as Herter's, in a batch sold exclusively at Cabela's and Bass Pro Shops. He testified that the magazines found in At The Straight's car were for a Beretta PX4 Storm pistol and loaded with 9mm ammunition. His examination of all the ammunition found in At The Straight's car showed that it contained 9mm ammunition of three manufacture types: Federal Cartridges American Eagle, Federal Cartridges, and Winchester marketed as Herter's for sale through Cabela's and Bass Pro Shop.

[¶17.] Jessika Simon, a forensic scientist from the South Dakota Forensic Lab, testified that despite collecting DNA evidence from the shell casings recovered from the shooting scene, she could not identify the source of the DNA. However, the DNA collected from the Impala was identifiable. Her testing revealed that the door handle had DNA from two individuals. At The Straight was described as "a major contributor," and Chanel was described as "a minor contributor." Her testing revealed that the steering wheel contained DNA from two sources. She identified At The Straight as the major contributor and indicated that the second source was an unidentified minor contributor. During cross-examination, she acknowledged that she had tested the various ammunition and located some DNA, but the amount was insufficient to enable her to make any comparisons to known samples.

[¶18.] At the close of the State's case-in-chief, At The Straight moved for a judgment of acquittal, which the circuit court denied. At The Straight rested his

case without presenting any evidence; the jury subsequently found him guilty on all counts. At The Straight renewed his motion for judgment of acquittal, which the circuit court again denied.

[¶19.]     At The Straight denied the allegations in the State's part II habitual offender information. In its verdict, the jury in the habitual offender trial found that At The Straight had five prior felony convictions. At a subsequent hearing, the circuit court sentenced At The Straight to 25 years for attempted first-degree murder (count one), 15 years for aggravated assault (count two), and 25 years for the commission of a felony while armed with a firearm (count six), with five years suspended. The circuit court did not impose sentences on counts three, four, or five (all aggravated assault). The circuit court ordered the sentences to be served consecutively and required restitution of $403,058.48. At The Straight appeals and contends the circuit court erred when it denied his motions for judgment of acquittal.

## Standard of Review

[¶20.]     This Court reviews the "denial of a motion for judgment of acquittal de novo." *State v. Armstrong*, 2020 S.D. 6, ¶ 12, 939 N.W.2d 9, 12 (citing *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83). "When conducting our review, we 'determine whether the evidence was sufficient to sustain the conviction.'" *State v. Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d 488, 500 (quoting *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904). "We consider the evidence in the light most favorable to the verdict and will not set aside a guilty verdict on appeal 'if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of

guilt.'" *State v. Bausch*, 2017 S.D. 1, ¶ 25, 889 N.W.2d 404, 411 (quoting *State v. Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d 35, 40).

> In determining the sufficiency of the evidence, this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt.

*Id.* ¶ 33, 889 N.W.2d at 413 (quoting *State v. Bucholz*, 1999 S.D. 110, ¶ 33, 598 N.W.2d 899, 905).

## Analysis

[¶21.]     At The Straight was convicted of and sentenced for attempted first-degree murder,[2] aggravated assault,[3] and commission of a felony while armed with a firearm.[4] At The Straight contends the circuit court erred when it denied his motions for judgment of acquittal. His argument is premised on three areas in which he believes the State's case was deficient. First, he contends there was insufficient DNA evidence to link him to the shooting. Second, he argues the State failed to establish any motive for him to commit these crimes. Third, he asserts

---

2.    He was charged with attempted first-degree murder, alleging that he attempted with a premeditated design to effect the death of Dillon Big Eagle in violation of SDCL 22-16-4 and SDCL 22-4-1.

3.    He was charged with four counts of aggravated assault under various sections of SDCL 22-18-1.1. Although the jury convicted him of all four counts, the circuit court only sentenced him for the conviction on count two, for violation of SDCL 22-18-1.1(1) ("any person who [a]ttempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life[.]").

4.    SDCL 22-14-12 provides in part: "Any person who commits or attempts to commit any felony while armed with a firearm, including a machine gun or short shotgun, is guilty of a Class 2 felony for the first conviction."

that the State failed to present sufficient evidence to establish specific intent to commit first-degree murder, which he equates with the element of premeditation necessary to prove a first-degree murder charge. He unsuccessfully presented these same arguments to the jury and the circuit court.[5]

[¶22.] To prove attempted first-degree murder, the State was required to prove that At The Straight "(1) had the specific intent to [commit the crime of first-degree murder], (2) committed a direct act toward [the commission of first-degree murder], and (3) failed or was prevented or intercepted in the perpetration of the crime." *State v. Berhanu*, 2006 S.D. 94, ¶ 15, 724 N.W.2d 181, 185. "Homicide is murder in the first degree: If [it is] perpetrated without authority of law and with a premeditated design to effect the death of [a] person[.]" SDCL 22-16-4(1).

[¶23.] Because At The Straight was charged with attempted first-degree murder, the State did not need to prove the elements of a completed murder. However, to establish that attempt crime, the State had to prove that At The Straight acted with the specific intent to commit first-degree murder, a mens rea that aligns with the definition of premeditation:

> The term, premeditated design to effect the death, means an intention, purpose, or determination to kill or take the life of the person killed, distinctly formed and existing in the mind of the perpetrator before committing the act resulting in the death of the person killed. A premeditated design to effect death sufficient to constitute murder may be formed instantly before committing the act.

---

5. At The Straight directs his arguments to the first-degree murder conviction, but he also challenges his convictions for aggravated assault and commission of a felony with a firearm. For both, he simply states, "For the same reasons previously stated [relating to the first-degree murder conviction], the perpetrator's identity is lacking with the exception of the testimony from Dillon Big Eagle."

SDCL 22-16-5.

[¶24.]    "Premeditation may be inferred from the facts and circumstances surrounding the murder." *State v. Helmer*, 1996 S.D. 31, ¶ 38, 545 N.W.2d 471, 477 (citing *State v. Corder*, 460 N.W.2d 733, 739 (S.D. 1990)). "The significant factors to be considered in determining premeditation include: [1] the use of a lethal or deadly weapon, [2] the manner and nature of the killing, [3] the defendant's conduct before and after the murder, and [4] the determination of the presence or absence of provocation." *Id.* (citing *Corder*, 460 N.W.2d at 739).

[¶25.]    "All elements of a crime, including intent . . . , may be established circumstantially." *State v. Jensen*, 2007 S.D. 76, ¶ 9, 737 N.W.2d 285, 288 (omission in original) (quoting *State v. Guthrie*, 2001 S.D. 61, ¶ 48, 627 N.W.2d 401, 421). "Circumstantial evidence is critically important in [determining criminal intent] because a state of the mind is rarely proved by direct evidence." *State v. Tofani*, 2006 S.D. 63, ¶ 45, 719 N.W.2d 391, 404 (citing *United States v. Smallwood*, 443 F.2d 535, 541 (8th Cir. 1971)). Viewed in the light most favorable to the verdict, there is sufficient evidence upon which a juror could conclude that At The Straight went to the scene to confront Dillon and then fired his gun with the specific intent to kill Dillon.

[¶26.]    A de novo review of the record shows that the State presented substantial evidence establishing that At The Straight was the shooter and that he acted with the specific intent to kill Dillon. Dillon knew At The Straight before the incident and identified him at trial as the person who shot him. At The Straight was in a romantic relationship with Dillon's sister, Chanel. Dillon testified that he

and At The Straight had a verbal altercation a few weeks earlier. Shortly before the shooting, Chanel called both At The Straight and Dillon. Puppel testified that At The Straight admitted to shooting Dillon; At The Straight told Puppel that he went to Chanel's house because Dillon was not supposed to be there. Puppel also testified that At The Straight told him how he had disposed of the gun used in the shooting.

[¶27.] Furthermore, physical evidence supports the verdict. Police recovered spent 9mm ammunition at the scene of the shooting. Garreaux testified that a black car pulled up behind her shortly before the shooting. Several days after the shooting, Rapid City police found a black Chevy Impala belonging to At The Straight. At The Straight was also found and detained at the location of the Impala. Live ammunition, including 9mm rounds, was found in the Impala. Several items in the Impala linked the vehicle to At The Straight: the bill of sale listing At The Straight's name, a bank card in At The Straight's name, and mail addressed to At The Straight. A DNA expert testified that the Impala contained At The Straight's DNA. A firearms expert linked the type of ammunition found in the Impala with the spent ammunition found at the scene of the shooting.

[¶28.] Despite the substantial evidence presented by the State showing that At The Straight was the shooter, At The Straight focuses on the fact that the State was unable to present any DNA evidence connecting him to the crime scene. First, At The Straight notes that the firearm was never recovered; consequently, there is no fingerprint or DNA evidence to connect him to a firearm. This argument discounts other significant evidence the jury could have relied upon to conclude that

At The Straight was the shooter. One example is Dillon's testimony that several weeks before the shooting, At The Straight had shown him a pistol and fired it. Additionally, a photo showing At The Straight holding a pistol of the type used in the shooting was admitted into evidence. Another example is Puppel's testimony that At The Straight told him he had disassembled the pistol and discarded its parts.

[¶29.] Second, At The Straight argues that the DNA expert could not locate sufficient DNA on any ammunition to show that At The Straight handled it. However, this argument ignores Maritz's testimony that the live ammunition found in At The Straight's car was produced by the same two manufacturers of the spent ammunition found at the scene of the shooting. There was sufficient evidence upon which a jury could find that At The Straight possessed a pistol of the type used in the shooting.

[¶30.] Despite the compelling evidence presented by the State, At The Straight contends that the State failed to establish the specific intent required to convict him of attempted first-degree murder. He argues that the State presented no evidence of motive. Although the jurors were instructed that motive was not an element of any of the offenses charged, the court also instructed:

> However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish guilt. Absence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled.

[¶31.] At The Straight incorrectly asserts that the State presented no evidence of motive. However, Dillon testified that he and At The Straight had a

verbal altercation a few weeks before the shooting. Dillon also explained that he and Chanel were not getting along because of this argument. Chanel's cell phone records establish that she called At The Straight just minutes before the shooting. Puppel testified that At The Straight told him he went to Chanel's house as soon as he learned Dillon was there. Viewed in the light most favorable to the verdict, there was sufficient evidence upon which a juror could conclude that At The Straight had a motive to shoot Dillon. Moreover, the fact that he shot Dillon multiple times, resulting in life-threatening wounds, supports a finding that he acted with the specific intent to kill him.

[¶32.]    As in *State v. Krueger*, 2020 S.D. 57, ¶ 28, 950 N.W.2d 664, 672, At The Straight's contentions "are essentially an effort to relitigate the evidence and overlook our deferential standard for determining the sufficiency of the evidence. This well-established standard forbids us from reweighing evidence the jury has already considered and instead requires us to indulge every reasonable inference in favor of the jury's verdict." Applying the correct standard leads to the conclusion that sufficient evidence supports the circuit court's decision to deny At The Straight's motions for judgment of acquittal. We affirm.

[¶33.]    JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.