#26055-a-DG

**2012 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

TRENT DANIELSON,                          Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


ERIC D. WHITCHER
Lawrence County Public
 Defender's Office
Deadwood, South Dakota                    Attorneys for defendant
                                          and appellant.


* * * *

                                          CONSIDERED ON BRIEFS
                                          ON FEBRUARY 14, 2012

                                          OPINION FILED **05/16/12**

GILBERTSON, Chief Justice

[¶1.]     A jury found Trent Danielson guilty of perjury.  Danielson appeals, arguing that the evidence was insufficient to sustain the verdict, the trial court erred in denying his motion for a court-appointed private investigator, and the court erred in denying a motion in limine and admitting used transmission parts into evidence.  We affirm.

## FACTS

[¶2.]     Rocket Lube of Spearfish, South Dakota, hired Danielson as a mechanic and automobile painter in 2003.  Rocket Lube fired Danielson in 2006, claiming that Danielson stole auto parts and did not remit checks for work done by Danielson on vehicles belonging to Dr. Tom Cox.

[¶3.]     Danielson was indicted on one count of grand theft and the case proceeded to a jury trial.  During trial, the State argued that the checks from Dr. Cox were property of Rocket Lube.  Danielson testified that he and Dr. Cox had a private agreement and that the checks belonged to him.  According to Danielson's testimony, Dr. Cox felt that Rocket Lube was taking advantage of Dr. Cox and thus, Dr. Cox asked Danielson to work on Dr. Cox's vehicles in Danielson's spare time to save expenses.  Danielson testified that he replaced a front clutch pack in the automatic transmission of Dr. Cox's 1950 Studebaker.  Dr. Cox admitted that he felt that Rocket Lube was overcharging him, but he testified that he thought that Danielson was still acting as an agent of Rocket Lube when performing the work on Dr. Cox's vehicles.  The jury found Danielson not guilty of grand theft.

[¶4.] Then, in October 2008, a grand jury indicted Danielson on one count of perjury during a felony trial. The indictment alleged that Danielson committed perjury during the grand theft jury trial by testifying falsely that "he had replaced parts inside the transmission of Dr. Tom Cox's 1950 Studebaker pick-up truck." The indictment further alleged that Danielson did not actually perform this work.

[¶5.] Danielson moved to dismiss the perjury indictment as a violation of the constitutional prohibition against double jeopardy, arguing that the jury acquittal was a final determination that he did perform the work in question. The trial court agreed and granted Danielson's motion to dismiss. This Court reversed and remanded on appeal, holding that "Danielson has failed to satisfy his burden of demonstrating that the jury's not guilty verdict necessarily included an implicit factual finding that he performed the work on the 1950 Studebaker." *State v. Danielson*, 2010 S.D. 58, ¶¶ 11-12, 786 N.W.2d 354, 358.

[¶6.] On remand, the perjury case proceeded to a jury trial. The jury found Danielson guilty of perjury. Danielson appeals.

[¶7.] The issues on appeal are:

1. Whether the jury had sufficient evidence to find Danielson guilty of perjury.

2. Whether the trial court abused its discretion in denying Danielson's request for a court-appointed private investigator.

3. Whether the trial court abused its discretion in admitting used transmission parts into evidence.

4. Whether the trial court abused its discretion in denying Danielson's motion to dismiss based on the destruction of evidence.

## STANDARD OF REVIEW

[¶8.]     Danielson appeals the trial court's denial of his motion for judgment of acquittal.  "We review the denial of a motion for judgment of acquittal as a question of law under the de novo standard."  *State v. Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d 35, 40.  "On appeal, the question before this Court is whether the evidence was sufficient to sustain the convictions."  *Id.*  "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *State v. Stark*, 2011 S.D. 46, ¶ 21, 802 N.W.2d 165, 172.  "We accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict."  *Id.*  In addition, "the jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.*  "This Court will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence."  *Id.*

[¶9.]     Danielson also appeals the trial court's denial of a motion for the appointment of a private investigator, a motion in limine, and a motion to dismiss based on the destruction of evidence.  "The appointment of an expert is in the discretion of the trial court."  *In re E.L. and R.L.*, 2005 S.D. 124, ¶ 22, 707 N.W.2d 841, 847.  This Court also reviews a "trial court's denial of a motion to dismiss [based on the destruction of evidence] under an abuse of discretion standard."  *State v. Williams*, 2008 S.D. 29, ¶ 23, 748 N.W.2d 435, 442.  In addition, we review "a trial court's evidentiary rulings under an abuse of discretion standard."  *State v. Fisher*, 2011 S.D. 74, ¶ 32, 805 N.W.2d 571, 578.  "An abuse of discretion refers to a

discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id.* Furthermore, "[e]ven if a trial court's evidentiary ruling is erroneous, the error must be prejudicial in nature before we will overturn the ruling." *Id.* "Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it." *Id.*

## ANALYSIS

[¶10.]     1.     **Whether the jury had sufficient evidence to find Danielson guilty of perjury.**

[¶11.]     Danielson argues that the jury did not have sufficient evidence to find him guilty of perjury. Danielson specifically challenges materiality and mens rea. Danielson argues that whether certain repair work was done or not done was not material to the grand theft trial, and thus, any alleged false statement does not constitute perjury under SDCL 22-29-1. Danielson also argues that the State did not prove that he intentionally misled the jury in making any alleged false statement. Danielson asserts that the alleged false statement could have been a result of faulty memory or mistake.

[¶12.]     The State responds that materiality is an issue for the jury to decide. The State contends that Danielson's testimony about repair work was material to the grand theft trial because it bolstered and affected Danielson's credibility and his claim of right defense. The State further asserts that perjury is a general intent crime and alternatively argues that even if perjury is a specific intent crime, the State established that Danielson had the specific intent to make a false statement of material fact.

[¶13.]     Perjury is codified in SDCL Chapter 22-29.  Under SDCL 22-29-1,

> Any person who, having taken an oath to testify, declare, depose, or certify truly, before any competent tribunal, officer, or person, in any state or federal proceeding or action in which such an oath may by law be administered, states, intentionally and contrary to the oath, any material matter which the person knows to be false, is guilty of perjury.

"It is sufficient for a [perjury] conviction . . . that a finding of guilty is based upon admissible evidence."  SDCL 22-29-18.

[¶14.]     Regarding materiality, "[i]t is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement, or that the false statement did not in fact affect the proceeding in or for which the false statement was made."  SDCL 22-29-4.  "It is sufficient that the false statement was material and might have been used to affect such proceeding."  *Id.*  Furthermore, "[a] statement is sufficient to support a charge of perjury 'if it is material to any proper matter of inquiry, and if, furthermore, it is calculated and intended to bolster the testimony of a witness on some material point, or to support or attack the credibility of a witness.'"  *State v. Maves*, 358 N.W.2d 805, 810 (S.D. 1984) (quoting *State v. Lachowitzer*, 314 N.W.2d 307, 310 (S.D. 1982)).  "A statement made by a witness during the course of a trial is also material if it 'has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or . . . is capable of influencing the court, officer, tribunal, or other body created by law on any proper matter of inquiry.'"  *Lachowitzer*, 314 N.W.2d at 310 (quoting *State v. Deets*, 195 N.W.2d 118, 122 (Iowa 1972)).  The materiality element is an issue for the jury to decide.  *State v. Pechan*, 1996 S.D. 123, ¶¶ 9-12, 554 N.W.2d 663, 664-65.

[¶15.]     In this case, the State presented several witnesses, including three expert witnesses. The State's experts generally opined that the 1950 Studebaker's transmission had not been disassembled recently and that it contained mostly original, manufacturer-issued parts. The State introduced a partial transcript of the grand theft trial, which included all of Danielson's testimony in that trial. After the State's case-in-chief, Danielson moved for a judgment of acquittal, arguing that the State did not establish materiality because the State only introduced a partial transcript from the grand theft trial which did not include the State's case-in-chief and also because the State did not introduce the grand theft indictment. The State responded that materiality is established through Danielson's claim of right defense in the grand theft trial which is asserted in Danielson's testimony, eliminating the need to introduce the rest of the grand theft trial transcript. The trial court denied Danielson's judgment of acquittal motion, noting that materiality is a jury issue and finding that the State presented sufficient evidence to submit the case to the jury.

[¶16.]     It is no defense to perjury that Danielson did not recognize the materiality of his grand theft trial testimony or that the testimony did not in fact affect the grand theft proceeding. Under SDCL 22-29-4, it is sufficient that Danielson's testimony might have been used by the grand theft jury. Furthermore, the perjury jury could have reasonably concluded that Danielson's testimony about the repair work in the grand theft trial was calculated and intended to bolster Danielson's testimony on his claim of right defense, a material point, or to support or attack the credibility of Danielson as a witness during the grand theft trial. Because Danielson's testimony had a legitimate tendency to prove or disprove a

relevant fact irrespective of the main fact at issue, we find that the jury could have reasonably concluded that Danielson's testimony in the grand theft trial was material.

[¶17.]    In addition, the State's failure to introduce the entire grand theft trial transcript was not fatal to the materiality element. The grand theft trial transcript included three volumes. Volume Three contained all of Danielson's testimony. The State offered and the court received Volume Three during the State's case-in-chief at the perjury trial. Then, while the first defense witness was on the stand, Danielson offered Volume Two. The court received Volume Two, overruling a relevancy objection by the State. During cross-examination of the same defense witness, the State offered Volume One. Danielson objected because the first few pages of Volume One appeared to be missing. The court sustained this objection and Volume One was not admitted as an exhibit. In the end, Volume Two and Volume Three of the grand theft trial transcript were admitted as exhibits in the perjury trial, and Danielson's claim that the entire transcript was not before the perjury jury is somewhat disingenuous because it was Danielson that objected to the admission of Volume One. Moreover, Volume Three contained Danielson's testimony, including his claim of right defense, and provided sufficient evidence for the jury to determine materiality in the perjury trial.

[¶18.]    The facts relating to materiality in this case are analogous to the facts in *Lachowitzer*, 314 N.W.2d 307. In *Lachowitzer*, a jury found the defendant not-guilty of theft by deception after the defendant testified and asserted a claim of right defense. *Id.* at 309. The defendant was subsequently charged with perjury for

testimony he gave at the theft trial. *Id.* A jury found the defendant guilty of perjury. *Id.* at 308. On appeal, the defendant argued that "the evidence introduced at his perjury trial was insufficient to support a finding that the perjured testimony was material to the issues at the [theft] trial." *Id.* at 310. This Court affirmed, finding that "[the d]efendant's testimony may not be directly material to the principal issue of whether he obtained the repair work with [the] intent to defraud Midas Muffler by creating a false impression, but it is material to [the] defendant's claim of right defense." *Id.*

[¶19.] Here, like the defendant in *Lachowitzer*, Danielson testified and asserted a claim of right defense during the grand theft trial. Also like the defendant in *Lachowitzer*, Danielson argues that the State did not establish materiality for perjury. However, like the perjured statements in *Lachowitzer*, Danielson's alleged false statements bolstered his credibility and supported his claim of right defense. Therefore, as this Court concluded in *Lachowitzer*, the evidence introduced at Danielson's perjury trial was sufficient to support a finding that Danielson's testimony was material to the grand theft proceeding.[1]

---

1. Danielson claims that *Lachowitzer* is materially distinguishable because both the petty theft information and a claim of right jury instruction were read to the perjury jury in that case. *Lachowitzer*, 314 N.W.2d at 310. Danielson notes that, in contrast, neither the grand theft indictment nor a claim of right jury instruction were read to the perjury jury in this case. While the grand theft indictment and a claim of right jury instruction may have assisted the perjury jury in determining materiality, the State's failure to introduce these documents is not fatal to its case. The perjury jury was instructed on the elements of perjury and the meaning of materiality and also had Danielson's grand theft trial testimony before it. Therefore, even without the grand theft indictment and a claim of right jury instruction, the perjury jury in this case

(continued . . .)

[¶20.]        In addition to materiality, Danielson also claims that the State did not establish mens rea, arguing that perjury requires the specific intent to mislead the jury and relying on the legislature's use of the word "intentionally" in SDCL 22-29-1. We have not previously addressed the mens rea requirement of SDCL 22-29-1.[2] "However, we have addressed the dichotomy of specific intent/general intent crimes several times under other statutes." *State v. Schouten*, 2005 S.D. 122, ¶ 11, 707 N.W.2d 820, 823 (citations omitted). "The use of the terms 'intentionally' or 'knowingly' merely designate that the culpability required is something more than negligence or recklessness." *State v. Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d 712, 718. "Mere use of that term (intentionally) does not designate an additional mental state beyond that accompanying act." *Id.* "Whether or not a crime is a general intent or specific intent crime depends upon its legislative enactment." *Id.* "Specific intent has been defined as meaning some intent in addition to the intent to do the physical act which the crime requires, while general intent means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires." *Id.*

[¶21.]        Contrary to Danielson's arguments, nothing in SDCL 22-29-1 requires the specific intent to mislead a party or fact finder. Certainly, the legislature's use

---

(. . . continued)
could have reasonably concluded that Danielson's testimony was material to the grand theft trial.

2.    We previously addressed the mens rea requirement for the crime of false statements as perjury under SDCL 4-9-4. *State v. Shilvock-Havird*, 472 N.W.2d 773, 776-77 (S.D. 1991). However, as we noted in the *Shilvock-Havird* opinion, that crime differs from general perjury under SDCL 22-29-1. *See id.*

of the term "intentionally" alone does not produce that result. A review of the record demonstrates that there was sufficient evidence for the perjury jury to reasonably conclude that Danielson, intentionally and contrary to oath, stated a material matter which Danielson knew to be false. Therefore, the trial court did not err in denying Danielson's motion for judgment of acquittal and we affirm on this issue.

[¶22.]     **2.     Whether the trial court abused its discretion in denying Danielson's request for a court-appointed private investigator.**

[¶23.]     Danielson argues that the court erred in denying his motion for the appointment of a private investigator. In "determining [whether] court-appointed experts are essential to an adequate defense[,]" we consider the following guidelines:

> 1) The request must be made in good faith; 2) the request must be reasonable in all respects; 3) the request[ ] must be timely and set forth reasons which seem to make such services needed or necessary to the defendant; and 4) the request must specify that the defendant is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained if the defendant were financially able.

*E.L. and R.L.*, 2005 S.D. 124, ¶ 22, 707 N.W.2d at 847-48. "Trial courts should scrutinize a defense request for an expert to insure that an indigent defendant may procure any reasonable defense, and, when in doubt, lean toward the appointment of such an expert." *State v. Stuck*, 434 N.W.2d 43, 51 (S.D. 1988). However, "if the request is frivolous, unreasonable, unnecessary for an adequate defense, or without underlying factual support, the appointment need not be made." *E.L. and R.L.*, 2005 S.D. 124, ¶ 22, 707 N.W.2d at 848. We apply these concepts regarding

appointment of experts to requests for appointments of private investigators. *See State v. Goodroad*, 1997 S.D. 46, ¶¶ 42-50, 563 N.W.2d 126, 135-36.

[¶24.]     Here, Danielson, an indigent defendant, moved for appointment of both an expert witness and a private investigator. Danielson argued that a private investigator was necessary because the case was complex, had been ongoing for many years, and because the 1950 Studebaker had been possessed by multiple mechanics and people before the transmission parts were seized for the perjury trial. The court granted Danielson's request for an expert witness but denied Danielson's motion for appointment of a private investigator. In doing so, the court stated that "I will allow [Danielson's] expert who's going to review parts to also inquire as to the possession of the transmission from the date that it's alleged that Mr. Danielson worked on the vehicle. I think that would cover your concern." Upon this record, we find that the court did not abuse its discretion in denying Danielson's motion for appointment of a private investigator.

[¶25.]     **3.     Whether the trial court abused its discretion in admitting used transmission parts into evidence.**

[¶26.]     Danielson argues that the trial court erred in admitting used transmission parts into evidence. Danielson challenges this ruling on three grounds: relevancy, chain of custody, and destruction of evidence. Because the chain of custody challenge relates to a motion in limine and the destruction of evidence challenge relates to a motion to dismiss, we separately review these claims.

[¶27.]     During the pretrial motions stage of the perjury proceeding, Danielson moved to exclude the 1950 Studebaker clutch and any testimony about the clutch because "the object lack[ed] sufficient chain of custody for such evidence to be admissible." The court denied Danielson's motion in limine regarding the chain of custody, stating that the State could establish chain of custody at trial. During the trial, Danielson objected to the admission of the used transmission parts on foundation grounds.

[¶28.]     First, we question whether Danielson's relevancy challenge was properly preserved for appeal. "We generally do not reverse trial courts for reasons not argued before them." *Rogen v. Monson*, 2000 S.D. 51, ¶ 15, 609 N.W.2d 456, 459. "Generally, parties must object to specific court action and state the reason underlying their objection so that the circuit court has an opportunity to correct any error." *State v. Johnson*, 2009 S.D. 67, ¶ 16, 771 N.W.2d 360, 367. This Court has permitted some flexibility in this rule. *See id.* (finding that a Sixth Amendment confrontation rights challenge was preserved for appeal when a motion in limine merely argued that the defendant would not have an opportunity to cross-examine a witness). However, a defendant's motion or objection must at least "make the [lower] court aware of his [or her] concerns[.]" *Id.* Furthermore, we recognize that "[t]he objection of 'lack of foundation' has no single defined meaning, and an objection of 'lack of foundation' generally is of little or no use to a trial judge." *Rogen*, 2000 S.D. 51, ¶ 15, 609 N.W.2d at 459 (quoting *Tolver v. State*, 269 Ga. 530, 500 S.E.2d 563, 565 (1998)).

[¶29.]       Here, Danielson did not challenge the relevancy of the used transmission parts at the lower court level. Danielson's motion in limine regarding the used transmission parts challenged the evidence on chain of custody grounds and Danielson objected at trial citing lack of foundation. Thus, the trial court did not have an opportunity to rule on the relevancy of the transmission parts under SDCL 19-12-1 and -2 or on Danielson's claim that the evidence should have been excluded under SDCL 19-12-3. Danielson's relevancy argument was not preserved for appeal.

[¶30.]       Regarding chain of custody, "[t]rial courts have broad discretion in determining the competency of chain of custody evidence." *State v. Reay*, 2009 S.D. 10, ¶ 22, 762 N.W.2d 356, 363. "In considering the admissibility of demonstrative evidence, the trial judge must be satisfied in reasonable probability that the object sought to be admitted is the one involved in the case, and that it has not changed in important respects." *Id.* "The 'chain of custody' rule, requiring the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to its offer at trial is to ensure that the real evidence offered is that object which was involved in the transaction, and that the object is in a substantially unchanged condition." *Id.* ¶ 25. In addition,

> where the offered object is not readily identifiable or distinguishable, or is susceptible to alteration by mistake in substitution, tampering[,] or contamination, a proper foundation requires testimony tracing the chain of custody of the object with sufficient completeness to render it improbable that the original item has been so altered.

*State v. Brings Plenty*, 490 N.W.2d 261, 265 (S.D. 1992).

[¶31.]     "It is not necessary for the State to establish an absolutely perfect chain of custody, but the testimony must at least strongly suggest the exact whereabouts of the exhibit at all times." *Id.* (citations omitted). Furthermore, "[m]ere suspicion or speculation is insufficient to establish a break in the chain of custody." *Id.* ¶ 26.

[¶32.]     In this case, Danielson challenges the whereabouts of the 1950 Studebaker between 2006 and 2008. Danielson claims that the location of the vehicle prior to 2008 is relevant because he allegedly replaced the clutch parts in 2006. The record demonstrates that the State seized the transmission parts in October 2008. The State demonstrated with reasonable probability that no tampering or substitution had occurred after October 2008 by having the evidence custodians testify at trial. In addition, the mechanics who examined and dismantled the transmission also testified at trial. Danielson merely speculates that the evidence was altered or tampered with. Danielson has not only failed to show that the challenged evidence was in some way altered or tampered with, but Danielson has also failed to demonstrate that the trial court's rulings regarding the chain of custody constitute prejudicial error. Furthermore, unlike drugs or blood, used transmission parts from a 1950 Studebaker are arguably readily identifiable, distinguishable, and not easily susceptible to alteration by mistake in substitution, tampering, or contamination. Therefore, we conclude that the trial court did not abuse its discretion in denying Danielson's motion in limine regarding the used transmission parts.

[¶33.]     **4.     Whether the trial court abused its discretion in denying Danielson's motion to dismiss based on the destruction of evidence.**

[¶34.]     Danielson argues that the State removed and discarded certain parts from the 1950 Studebaker, including the transmission filter. Danielson claims that the discarded parts would have demonstrated the transmission's age and usage, making it significant and exculpatory evidence. Danielson notes that one of the State's experts testified that the transmission pan and filter were newer than the rest of the transmission parts, "thereby demonstrating that someone had altered the evidence[,]" according to Danielson.[3] Thus, Danielson claims that the trial court should have granted Danielson's motion to dismiss, or, at the very least, excluded the other used transmission parts from evidence.

[¶35.]     The State responds that the trial court denied Danielson's motion to dismiss based on destruction of evidence because the trial judge "[hadn't] seen any activity by the State with regard to the evidence that would warrant dismissal based on the destruction of evidence." The State also argues that Danielson's destruction of evidence claim focuses on the transmission pan and filter. The State notes that the perjury charge did not relate to whether Danielson changed the pan and filter (the State conceded that Danielson did that work), but rather related to

---

3.     From the record and appellate briefs, it is somewhat unclear whether Danielson believes that the transmission pan and filter would have shown that he changed the pan and filter himself (thus, creating the presumption that he also worked on the transmission clutch) or whether Danielson believes that the discarded parts would have shown that someone else changed the pan and filter (thus, suggesting that the evidence was tampered with sometime before the perjury trial). This argument seems to suggest the latter.

whether Danielson replaced the clutch or clutch pack, a separate transmission part. Thus, the State argues, the discarded evidence would not have played a significant role in the perjury trial. The State also contends that any discarded evidence was not destroyed in bad faith.

[¶36.] "The State's duty to preserve the evidence is limited to evidence that might be expected to play a *significant role* in a suspect's defense." *Williams*, 2008 S.D. 29, ¶ 23, 748 N.W.2d at 442. "Evidence plays a 'significant role' where the evidence possessed 'an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Moeller v. Weber*, 2004 S.D. 110, ¶ 15, 689 N.W.2d 1, 7 (quoting *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413 (1984)). "The State's destruction of evidence favorable to the defense is a violation of due process if the evidence requested by the defense and destroyed by the State is material either to guilt or punishment." *State v. Bousum*, 2003 S.D. 58, ¶ 15, 663 N.W.2d 257, 262.

[¶37.] "Additionally, the defense must show that the State acted in bad faith in releasing the evidence." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281, 289 (1981)). Indeed, "mere negligence in the loss or destruction of evidence does not result in a constitutional violation." *Id.*

> Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense.

*Id.* (citing *State v. Steffes*, 500 N.W.2d 608, 613 (N.D. 1993)).

[¶38.]     Here, Danielson has failed to demonstrate that the State, in bad faith, destroyed evidence that would have played a significant role in his defense. While the State failed to preserve the transmission pan and filter, the perjury charge centered on whether Danielson replaced the clutches or clutch packs. Even if the transmission pan and filter had some evidentiary value, Danielson has not demonstrated that these parts would have played a significant role in his defense. In addition, the record is devoid of any indication that the State deliberately destroyed evidence with the intent to deprive Danielson of the information. The State readily admitted that the pan and filter were newer than the other transmission parts and offered that information to Danielson. The State and its experts believed that the transmission pan and filter were immaterial to the perjury charge because the State believed that Danielson did, in fact, remove and replace those parts. Upon this record, we cannot say that the trial court abused its discretion when it denied Danielson's motion to dismiss.

## CONCLUSION

[¶39.]     The record demonstrates that when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of perjury beyond a reasonable doubt and there is sufficient evidence to sustain the jury's guilty verdict. Furthermore, the trial court did not abuse its discretion in denying Danielson's motion for appointment of a private investigator, motion in limine to exclude the transmission parts, and motion to dismiss for the destruction of evidence.

[¶40.]     Affirmed.

[¶41.]	KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.